**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1476. VICKERS v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial, Jamario Vickers was convicted of aggravated child molestation. He appeals the denial of his motion for new trial, arguing that his trial counsel was ineffective. Because Vickers has not shown both deficient performance and prejudice, he has not demonstrated ineffective assistance of trial counsel. So we affirm.

1. *Sufficiency of the evidence.*

Viewed in the light most favorable to the verdict, see *Virger v. State*, 305 Ga. 281, 286 (2) (824 SE2d 3346) (2019), the evidence shows that in November 2014, the

six-year-old victim and her seven-year-old and nine-year-old cousins[1] were playing in the outside stairwell of an apartment complex when sixteen-year-old Vickers joined them. Vickers told the victim to walk upstairs with him and gave the cousins a cell phone to use to play games. He told the cousins not to go upstairs.

Vickers walked upstairs with the victim to the landing at the top of the stairs. He pulled down the victim's pants and put his penis in her buttocks. The seven-year-old cousin went upstairs and saw Vickers moving on top of the victim with his penis "in her butt." Vickers pulled up his pants and told the cousin to go back downstairs. That cousin told the nine-year-old cousin, who then went upstairs and saw Vickers laying on top of the victim.

When the victim came down the stairs, she whispered to her seven-year-old cousin that Vickers "had put his private part in [her] booty."

A few days later, the victim disclosed what happened to two adults who were close family friends. A couple of weeks later, the victim, the cousins, the victim's mother, and the two adult family friends happened to see Vickers while they all were

---

[1]It is not clear whether the victim's companions were her biological cousins or if she just considered them to be her cousins.

waiting at a bus stop. The victim appeared to be terrified; the cousins explained to the adults that Vickers was standing nearby.

The victim and her cousins were interviewed by forensic interviewers who were qualified at trial as experts in the field of forensic interviewing. Recordings of those interviews were played for the jury and were consistent with the victim's and her cousins' trial testimony. In her interview, the victim described the abuse, telling the interviewer that Vickers took her upstairs, laid her on the ground, pulled her pants down, pulled his private part out, and put it in her "butt." She said it felt nasty and it hurt.

The state presented the testimony of an expert in forensic psychotherapy and the psychology of child sexual abuse who viewed the videotaped interviews. She testified that the victim's and her cousins' statements in the interviews were consistent with the cognitive ability and development of children their ages; the language they used was appropriate to their developmental levels; they provided contextual details; and there were no signs that the children had been influenced by suggestion.

"Although [Vickers] does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was

legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crime for which he was convicted." *Jones v. State*, 305 Ga. 653, 654 (1) (827 SE2d 254) (2019). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. *Ineffective assistance of counsel*.

Vickers claims that his trial counsel was ineffective in opening the door to the admission of evidence of his bad character. To prevail on this claim, Vickers "must show both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. . . . If [Vickers] fails to satisfy either the deficient performance or the prejudice prong of [this] test, [we are] not required to examine the other." *Slaton v. State*, 303 Ga. 651, 652-653 (2) (814 SE2d 344) (2018) (citations and punctuation omitted). "While we have often held that a defendant fails to satisfy the [prejudice prong] where the evidence is overwhelming, strong evidence of guilt can also support the conclusion that no reasonable probability of a different outcome exists."*Parker v. State*, 339 Ga. App. 285, 294 (3) (793 SE2d 173) (2016) .

Trial counsel called three defense witnesses: Vickers, his brother, and his sister. Trial counsel asked the brother whether Vickers has a good or bad reputation

4

in their community, and he answered good. When trial counsel asked the sister about her understanding of Vickers' reputation in the community, the sister answered that he looks like a "tough guy" on the outside but "he's really soft on the inside." Trial counsel asked the sister whether Vickers had any girlfriends and she said yes and that they were around his age.

On cross-examination, the prosecutor asked Vickers' sister whether she was aware that in December 2003, Vickers had been "suspended for choking a female, hitting another male student in the neck, throwing a chair against a chalkboard, refusing to sit down and calling a teacher a fool and giving that teacher the middle finger." The sister testified that she was aware, and explained that kids picked on Vickers and he lashed out. The prosecutor asked if the sister was aware that in November 2003, Vickers threatened a teacher that he would get his dad to shoot her and stated that the teacher could not tell him what to do. The sister responded that she did not "remember him threatening to shoot nobody, but [she] remember[ed] him telling the teacher he would get his dad on him." She explained that adults picked on Vickers, too. The prosecutor asked if the sister was aware that at school in November 2003, Vickers threw seven chairs and used profanity. But the sister did not answer. The prosecutor asked if the sister was aware that in November 2003, Vickers called

his teacher a "fat wh**e" and refused to sit down. The sister said she was not. The prosecutor asked whether the sister was aware that in November 2003, Vickers had in-school suspension for fighting other students and that when the teacher tried to take him to the office, he threatened to hit her. The sister said she was not aware and pointed out that Vickers was seven or eight years old in 2003. (In fact, Vickers was five or six years old when these incidents occurred.)

On redirect, trial counsel asked the sister whether Vickers has ever been or has a reputation for being inappropriate with children or sexually deviant, and the sister answered no. The prosecutor followed up by asking if the sister knew that through his teen years Vicker had over 30 girlfriends and 10 sexual partners. The sister responded that "[i]f he told y'all that he might have been telling y'all a story" and then answered "no." The prosecutor asked if the sister was aware that Vickers first had sex at the age of 12 with a 14-year-old girl, and the sister responded no.

In sum, the bad character evidence was old, limited, and of little value. It consisted of Vickers acting out in school over a two-month period more than thirteen years before trial, when he was five or six years old, and his teenaged boasts about his sexual experience. Pretermitting whether the evidence against Vickers was overwhelming, the evidence against him was strong. Given the limited nature of the

bad character evidence, Vickers "has not proved that any deficiency in counsel's opening the door to the statements likely affected the outcome of his trial." *Strother v. State,* 305 Ga. 838, 848-849 (5) (828 SE2d 327) (2019). In other words,

> we find no reasonable probability that the jury would have acquitted [Vickers] if only it had not heard about his [sexual boasts and 13-year-old] disciplinary history at [school], some of which may suggest a propensity for violence, but much of which merely concerns [disrespectful language toward his teacher. Vickers] has failed to prove that he was prejudiced by the performance of his trial lawyer, and his claim of ineffective assistance fails.

*Jones v. State*, 302 Ga. 892, 896 (2) (810 SE2d 140) (2018) (no reasonable probability that jury would have acquitted defendant if only it had not heard about his jail disciplinary history, including possession of contraband tobacco, 30 disciplinary write-ups, cursing at a female officer and calling her a "b***h," purportedly attacking someone with a dustpan handle, being shackled and handcuffed in his cell because he "attacked so many people," and smashing a video camera out of an officer's hand).

*Judgment affirmed. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps concur in judgment only.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2(a).**